## IN THE UNITED STATES FEDERAL COURT
## NORTHERN DISTRICT, OHIO

| | | |
|---|---|---|
| **KEVIN CRONIN** | ) | |
| *and* | ) | |
| **CLEVELANDBIKES** | ) | **CASE NO. 09 CV 2699** |
| *Plaintiffs,* | ) | |
| | ) | **JUDGE OLIVER** |
| *v.* | ) | |
| | ) | **MAG. JUDGE** |
| | ) | **BAUGHMAN** |
| **THE OHIO DEPARTMENT OF** | ) | |
| **TRANSPORTATION** | ) | **PLAINTIFFS' BRIEF IN** |
| *and* | ) | **OPPOSITION TO** |
| **U.S. DEPARTMENT OF** | ) | **DEFENDANT ODOT'S** |
| **TRANSPORTATION, FEDERAL** | ) | **MOTION TO DISMISS** |
| **HIGHWAY ADMINISTRATION et al.** | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |
| | ) | |

*Defendant ODOT's Motion to Dismiss should be rejected as it fails to meet the necessary*

*standard needed to deprive plaintiffs of their day in court.*

Plaintiff Kevin Cronin is an individual cyclist, who, like other cyclists, rides for healthy

recreation and lawful transportation in and around the proposed highway area.  ClevelandBikes

is a 501(C)(3) not for profit organization, founded in 2003 specifically to advocate for and

"protect and defend" the interests of cyclists in Northeast Ohio (see Incorporation Document,

attachment A).  Plaintiffs have presented designs and a rationale supporting the use of a multi-

1

use path, a segregated ten foot path that runs alongside the motor vehicle traffic of the bridge

deck, separated by a seventeen foot emergency lane and a concrete barrier (See design,

attachment B). A multi-use path is specifically authorized under Ohio law, which permits

bicycles on freeways "on a facility that is separated from the roadway and shoulders of the

freeway and is designed and appropriately marked for bicycle use." (See Ohio Rev. Code

§4511.051, attachment C). Multi-use paths have been built along highways in more than thirty

communities across the country (path list, Attachment D).


*Defendant ODOT has proposed a bridge and highway plan deleterious to the health and safety*

*of those on the road, whether the transportation choice is on foot, by bicycle or motorized*

*vehicle.* Defendant ODOT has been consistent in opposing the incorporation of cyclist and

pedestrian interests into its transportation infrastructure projects, even drawing the criticism of

co-defendant Federal Highway Administration for failing to adequately incorporate cycling and

pedestrian interests into planning and project development: "There is a demonstrated need to

improve upon the state of the practice regarding bicycle and pedestrian planning statewide. There

is also a need to continue to educate engineers and planners alike in this area." (see 2009 FHWA

Report, Executive Summary, attachment E). *If plaintiffs are not permitted to move forward, it's*

*not apparent how the issues are to be raised in Ohio at all.*


## Motion to Dismiss

The Standard of review for a Motion to Dismiss is whether the plaintiffs have raised any

potential basis for the claim, construing the assertions most favorably towards the plaintiffs:

2

The court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). Dismissal of a complaint under Fed.R.Civ.P. 12(b)(6) is proper when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561, 127 S.Ct. 1955, 1968 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957)).
 **In re Level Propane Gases, Inc.**, 040210 FED6, 09-804 7 (US Ct. App. 6th Cir., 2010).

Through defendant ODOT's Environmental Impact statement (EIS), ODOT asserted that all relevant facts were put before FHWA to permit making appropriate decisions, including the decision to deny a bicycle and pedestrian path on the proposed I-90 innerbelt bridge deck. However, the record fails to establish that, prior to FHWA's finalization of their Record of Decision:

- ODOT presented facts in the EIS regarding cyclist and pedestrian desires for a multi-use path to FHWA;
- ODOT presented cyclist's comments at the public hearings to FHWA; or
- Cyclists had an opportunity to refute any ODOT assertions opposing a bicycle and pedestrian path.

Had ODOT presented the public support for a "Bridge for All" that including bike and pedestrian multi-use path, the FHWA may have issued a different result. The US Department of Transportation has indicated very broad for bicycle and pedestrian opportunities through federal

transportation programs.   Earlier this year, US Department of Transportation announced plans to

revise criteria for evaluating some DOT projects to support more cycling and pedestrian

activities: "We are integrating the needs of bicyclists in federally-funded road projects. We are

discouraging transportation investments that negatively affect cyclists and pedestrians. And we

are encouraging investments that go beyond the minimum requirements and provide facilities for

bicyclists and pedestrians of all ages and abilities." (See comments of Secretary Ray LaHood,

US Department of Transportation, Attachment F).

***Would the FHWA decision have been different?*** We don't know as ODOT never gave FHWA

the most complete and most comprehensive information, to the detriment of both FHWA

decision-making and Northeast Ohio cyclists and pedestrians.


**Standing to Sue**


Defendant ODOT challenges plaintiffs standing to bring suit, a basis which turns on injury:

> To proceed with this action, the City must show both constitutional standing and
> prudential standing. Under Article III, constitutional standing requires: (1) an injury in
> fact, which is both concrete and particularized, and actual or imminent, not merely
> conjectural or hypothetical; (2) a causal connection between the injury and the conduct
> complained of; and (3) a likelihood that the injury can be redressed by a favorable
> decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d
> 351 (1992).
> **City of Sausalito v. O'Neill,** 211 F.Supp.2d 1175, 1185 (N.D.Cal. 2002).

Standing, at this stage, requires an actual, live controversy:

4

Standing is not merely a pretrial formality, but rather a constitutional directive that defines and limits the power of federal courts to hear only actual "cases" or "controversies." *See* U.S. CONST., ART. III, § 2, cl. 1. "The constitutional power of federal courts cannot be defined, and indeed has no substance, without reference to the necessity to adjudge the legal rights of litigants in actual controversies." *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (*quoting Liverpool S.S. Co. v. Commissioners of Emigration,* 113 U.S. 33, 39, 5 S.Ct. 352, 28 L.Ed. 899 (1885)). As such, the Supreme Court has repeatedly stated that:

> [A]t an irreducible minimum, Article III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision.

*Valley Forge Christian College,* 454 U.S. at 472, 102 S.Ct. 752 (internal citations and quotation marks omitted). In short, standing requires injury-in-fact, causation and redressability. **Steel Company v. Citizens for a Better Environment** 523 U.S. 83, 103-04, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

The type of injury has taken various forms, including the allegation of a "distinct and palpable" injury, **Warth v. Seldin**, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), but does not have to be substantial, as even "an 'identifiable trifle' will suffice." **Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.,** 913 F.2d 64, 71 (3rd Cir., 1990), including injury that harms plaintiffs' aesthetic and recreational interests (**Sierra Club v. Morton**, 405 U.S. 727, 735, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) or that an environmental group member had driven over a polluted body of water and was offended at its appearance stated a sufficient injury to justify standing (**Friends of the Earth v. Consolidated Rail Corp.,** 768 F.2d 57, 61 (2d Cir. 1985).

The Courts have also established that plaintiffs are not required to establish injury causation with "absolute scientific rigor."**Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.,** 913 F.2d 64, 72 (3rd Cir., 1990), but must establish that defendant's

conduct is "fairly traceable" to plaintiff's injury. **Simon v. Eastern Kentucky Welfare Rights Organization**, 426 U.S. 26, 38, 96 Sect. 1917, 48 L.Ed.2d 450 (1976). This inquiry basically asks the following question; is there a "substantial likelihood that defendants conduct caused plaintiff's harm." **Interfaith Community Organization v. Honeywell, 188 F.Supp.2d 486, 496 (D.N.J. 2002).**

The injury is no less established by the virtue of its assertion by an association or not for profit organization like ClevelandBikes:

> An association's or organizaton's standing to initiate suit on behalf of its members exists "when [1] its members would otherwise have standing to sue in their own right, [2] the interests at stake are germane to the organization's purpose, and [3] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (*citing Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)). An association can assert standing "[e]ven in the absence of injury to itself" as long as the individual members or individuals that possess the "indicia of membership" would individually have a justiciable case. *Warth,* 422 U.S. at 511, 95 S.Ct. 2197; *Hunt,* 432 U.S. at 343-44, 97 S.Ct. 2434.
> **Interfaith Community Organization v. Honeywell, 188 F.Supp.2d 486, 496 (D.N.J. 2002).**

Plaintiffs have adequate standing to proceed and get their day in court.

**Right of Action**

Defendant ODOT asserts the matter should be dismissed as plaintiffs lack standing to assert the proposed claim under various federal environmental laws. Whether plaintiffs can assert an injury and support the claim turns on finding an implied private right of action is analyzed under

the four-part test announced by the Supreme Court in **Cort v. Ash**, 422 U.S. 66, 78, 95 S.Ct.

2080, 2088, 45 L.Ed.2d 26 (1975), a case involving corporate spending in elections:

> We have previously summarized that test as follows:
> > (1) Is this plaintiff a member of the class for whose "special" benefit the statute was passed? In other words, does the statute create a federal right for this plaintiff?
> > (2) Is there any evidence of legislative intent, either explicit or implicit, to create or deny a private remedy?
> > (3) Is it consistent with the legislative scheme to imply a private remedy?
> > (4) Is the cause of action one traditionally relegated to state law so that implying a federal right of action would be inappropriate?
>
> **Lundeen v. Mineta**, 291 F.3d 300, 321 (5th Cir. 2002).

### *Class for Whose "Special Benefit" Statute Was Enacted:*

Defendant ODOT cites the Lundeen case to establish the framework for evaluating a private

right of action, a case filed by a single individual as plaintiff, bypassing the larger interests of an

association or nonprofit organization. ClevelandBikes was formed specifically to represent the

broader cycling interests, at the federal, state and local level (see Incorporation documents,

attachment A). As set out in the plaintiffs' Complaint, The environmental and transportation

legislation include numerous examples indicating the intent to advance the interests of cycling

and pedestrians in federally-funded transportation projects and equalize their consideration,

along with motorized vehicles. Plaintiffs are clearly a part of the class benefitted by the statute.

## *Evidence of Legislative Intent:*

The National Environmental Policy Act was created in response to the identification of

environmental hazards and the need to take urgent steps to ameliorate conditions and set the

nation on a cleaner, more environmentally harmonious path that meets the goal of long-term

sustainability:

> The National Environmental Policy Act was enacted in part to declare a national policy
> of encouraging productive and enjoyable harmony between man and the environment,
> and to prevent or eliminate damage to the environment. **42 U.S.C. § 4321**

> One of the responsibilities of the Federal government under the National Environmental
> Policy Act is to "preserve important historic, cultural, and natural aspects of the national
> heritage, and maintain, wherever possible, an environment which supports diversity and
> variety of individual choice...." **42 U.S.C. § 4331(b)(4)**

The Act set out a series of requirements, that an environmental impact statement need be

prepared for "major Federal actions significantly affecting the quality of the human

environment...." **42 U.S.C. § 4332(2)(C)**; **40 C.F.R. § 1508.11**. The requirement is not some

abstract document, but one to adequately inform decision makers and allow a full airing of

environmental issues:

> The National Environmental Policy Act provides that a detailed environmental impact
> statement shall be prepared for "major Federal actions significantly affecting the quality
> of the human environment...." 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1508.11. The purpose
> of an environmental impact statement is to provide full and fair discussion of significant
> environmental impacts and to inform decision makers and the public of reasonable
> alternatives which would minimize adverse impact to the environment 40 C.F.R. §
> 1502.1. The environmental impact statement must discuss: (1) the environmental impact
> of the proposed action; (2) any adverse environmental effects which cannot be avoided
> should the proposal be implemented; (3) alternatives to the proposed action; (4) the
> relationship between local short-term uses of man's environment and the maintenance and
> enhancement of long-term productivity; and (5) any irreversible and irretrievable

commitments of resources which would be involved in the proposed action should it be
implemented. 42 U.S.C. § 4332(2)(C).
 **City of Sausalito v. O'Neill, 211 F.Supp.2d 1175, 1190-91 (N.D.Cal. 2002).**

The statute contemplates judicial review:

> Our analysis under the first exception begins with the "strong presumption" that Congress
> intends that the federal courts review agency action.  The agency can rebut this
> presumption by pointing to "specific language or specific legislative history that is a
> reliable indicator of congressional intent."  The standard is whether congressional intent
> to preclude judicial review is "fairly discernible in the statutory scheme."  In determining
> whether this is so, we cast a broad evidentiary net: We look to the statute's language,
> structure, and legislative history, and also to the nature of the administrative action
> authorized.
> **Lundeen v. Mineta**, 291 F.3d 300, 305 (5th Cir. 2002).

As described in the complaint and briefs, ODOT never presented the information of cycling and

pedestrian advocates to FHWA for decision-making, undermining the accuracy and credibility of

FHWA decision-making that it utilized all relevant information in reaching its decision in the

Record of Decision.  Plaintiffs should be permitted to go forward to get their day in court.

## _Consistent with Legislative Scheme to Imply Private Remedy:_

In identifying a private right of action, federal courts have looked to the purpose of the

legislation and required a relationship to the purpose of the lawsuit, before deferring to an

agency.  In a case involving the National Park Service, the Court noted that the agency failed to

document its decision-making on the very subject the statute sought to protect, noise pollution in

the park, which it considered to be the very essence of arbitrary and capricious agency action:

> The ROD then states that the decision will be " beneficial in Yellowstone... compared to current use," *id.,* and concludes that " [i]mpairment of park resources will not occur; the level of oversnow vehicle sound under the decision will not harm the integrity of park resources and values." *Id.* NPS entirely fails to explain why a finding of minor, moderate, and major adverse impacts on soundscapes does not constitute impairment, let alone the lesser threshold of " unacceptable impacts." The NPS Policies clearly define an unacceptable impact as one that would " unreasonably interfere with ... the natural soundscape maintained in wilderness and natural, historical, or commemorative locations within the park." 2007 ROD at 29. Like the Court in *Mainella,* this Court is equally perplexed as to why any impact characterized as "major and adverse" does not constitute an unacceptable impact, let alone impairment. This is a distinction NPS again fails to explain. *See Mainella,* 459 F.Supp.2d at 102, n. 24. There is no higher level than "major" on the impact scale. NPS provides no explanation as to how the most adverse impacts can still be considered acceptable....the Court finds that the non-impairment conclusion regarding impacts to the natural soundscape in the parks is fundamentally arbitrary and capricious.
> **Greater Yellowstone Coalition v. Kempthorne,** 577 F.Supp.2d 183, 201-02 (D.D.C. 2008).

The Court proceeded to note that administrative agencies are often the beneficiary of deference,

but deference is only warranted when the facts asserted bear relationship to the decisions made

and clearly provide sufficient data to the decision-maker:

> The Court concluded, "the Winter Use Plan, as codified in the Final Rule and explained in the 2007 ROD, is arbitrary and capricious, unsupported by the record, and contrary to law. In contravention of the Organic Act, the Plan clearly elevates use over conservation of park resources and values and fails to articulate why the Plan's "major adverse impacts" are "necessary and appropriate to fulfill the purposes of the park."
>
> Furthermore, the FEIS in support of the Plan does not provide the decisionmaker with a clear analysis of the alternatives that NEPA requires. Chief among its failings, the FEIS relies on admittedly inaccurate sound modeling data, employs a park-wide metric that dilutes the Plan's impacts on soundscapes and air quality, and utterly fails to explain why none of the seven alternatives would constitute "impairment" or unacceptable impacts. According to NPS's own data, the WUP will increase air pollution, exceed the use levels recommended by NPS biologists to protect wildlife, and cause major adverse impacts to

the natural soundscape in Yellowstone. Despite this, NPS found that the plan's impacts are wholly " acceptable," and utterly fails to explain this incongruous conclusion. Put simply, the WUP provides "no rational connection between the facts found and the choice made." *Alpharma, Inc. v. Leavitt,* 460 F.3d 1, 6 (D.C.Cir.2006). While the Court will defer to an agency's exercise of expertise, the " Court will not defer to the agency's conclusory or unsupported assertions." *McDonnell Douglas Corp. v. U.S. Dep't of the Air Force,* 375 F.3d 1182, 1187 (D.C.Cir.2004)."
**Greater Yellowstone Coalition v. Kempthorne, 577 F.Supp.2d 183, 209-10 (D.D.C. 2008).**

Like the US Parks Service administrative action, ODOT failed to provide information offered at public hearings that cyclists and pedestrians sought a bike path on the proposed innerbelt bridge and to provide a multi-use path would represent positive steps for cycling access, public safety and public health. *It should come as no surprise that FHWA did not ask about bicycle/pedestrian access to the bridge.  ODOT made sure they only heard one side of the argument.*

### *Traditionally Relegated to State Law:*

Challenging Defendant ODOT and Defendant FHWA undermines no issue primarily reserved for state action and protecting cycling and pedestrian interests is consistent with the federal legislation.  Further, given the protection for cyclists riding alongside a freeway in a defined and marked path under the Ohio Revised Code (See Ohio Rev. Code §4511.051, attachment C), this lawsuit and the enforcement through the federal statutes are fully consistent with state law and state interests.

### *Conclusion:  Defendant ODOT's Motion to Dismiss should be rejected as it fails to meet the necessary standard needed to deprive plaintiffs of their day in court.*  Plaintiffs are both

***Conclusion: Defendant FHWA's Motion to Dismiss should be rejected as it fails to meet the necessary standard needed to deprive plaintiffs of their day in court.*** Plaintiffs are both individual, aggrieved cyclists and a 501(C)(3) not for profit organization, founded in 2003 specifically to advocate for and "protect and defend" the interests of cyclists in Northeast Ohio.

Defendant ODOT has proposed a bridge and highway plan deleterious to the health and safety of those on the road, whether the transportation choice is on foot, by bicycle or motorized vehicle. Defendant FHWA has endorsed the project, providing critical funding. However, FHWA's Record of Decision fails to establish that defendant ODOT met its responsibility to present all relevant information to FHWA for full and accurate decision-making, disadvantaging cyclists and pedestrians and barring the very perspective that the legislation intended to require in the decision-making. The failure to incorporate cycling and pedestrian interests is a long-standing shortcoming of the Ohio Department of Transportation, as noted by Defendant FHWA in their 2009 report. ***If plaintiffs are not permitted to move forward, it's not apparent that these issues are to be raised in Ohio at all.***

Respectfully submitted,

_Kevin Cronin_

KEVIN CRONIN, S. Ct. Reg. No. 0039891
Attorney for Plaintiffs
The Brown Hoist Building
4403 Saint Clair Avenue
Cleveland, Ohio 44103
ph: 216.377.0615; fx: 216.881.3928
kevin@kevincronin.us

1
2

## SERVICE

A copy of the foregoing Plaintiffs' Brief In Opposition to Defendant ODOT's Motion to Dismiss was sent by regular U.S. mail on this _7_ th day of April, 2010 to:

- Richard J. Makowski, Assistant Attorney General, Chief, Transportation Section, 150 East Gay Street, 22nd floor, Columbus, Ohio 43215(and by email to Richard.Makowski @ohioattorneygeneral.gov); and

- Lisa Hammond Johnson, counsel to defendant FHWA, Office of the US Attorney, 801 West Superior Avenue, Cleveland, Ohio 44113 (and by email to Lisa.Hammond. Johnson@usdoj.gov).


_Kevin Cronin_
Kevin Cronin, Attorney for Plaintiffs

# **Attachments**

   A. ClevelandBikes Articles of Incorporation (Portion)

   B. "Bridge For All" Coalition, Multi-Use Path Design

   C. Ohio Revised Code, Bicycle Path on Freeway

   D. Multi-use Paths on Interstate Highways, Nationwide Examples

   E. FHWA Report (4/09), Executive Summary

   F. U.S. Department of Transportation Policy Release; Statement of Department of Transportation Secretary Ray LaHood