IN THE UNITED STATES FEDERAL COURT
NORTHERN DISTRICT, OHIO

|  |  |
|---|---|
| KEVIN CRONIN<br>    and<br>CLEVELANDBIKES<br>    *Plaintiffs,*<br><br>v.<br><br>THE OHIO DEPARTMENT OF<br>    TRANSPORTATION<br>    and<br>U.S. DEPARTMENT OF<br>TRANSPORTATION, FEDERAL<br>    HIGHWAY ADMINISTRATION et al.<br>    *Defendants.* | CASE NO. 09 CV 2699<br><br>JUDGE OLIVER<br><br>MAGISTRATE JUDGE<br>BAUGHMAN<br><br>PLAINTIFFS' BRIEF IN<br>OPPOSITION TO MOTIONS<br>TO DISMISS OF<br>DEFENDANTS ODOT AND<br>FHWA |

*DEFENDANTS' MOTIONS TO DISMISS SHOULD NOT BE APPROVED AS THEY FAIL TO MEET THE STANDARD NEEDED TO DEPRIVE PLAINTIFFS OF THEIR DAY IN COURT.*

Plaintiff Kevin Cronin is an individual cyclist, who, like other cyclists, rides for healthy recreation and lawful transportation in and around the proposed highway area. ClevelandBikes is a 501(C)(3) not for profit organization, founded in 2003 specifically to advocate for and "protect and defend" the interests of cyclists in Northeast Ohio (see Incorporation Document, attachment A).

Plaintiffs have presented designs and a rationale supporting the construction of a pedestrian/ bicycle multi-use path, a ten foot path that runs alongside the motor vehicle traffic of the bridge deck, separated from motorized vehicular traffic by a concrete barrier and a seventeen foot emergency lane (See design, attachment B). A multi-use path is specifically authorized under Ohio law, which permits bicycles on freeways "on a facility that is separated from the roadway and shoulders of the freeway and is designed and appropriately marked for bicycle use." (See Ohio Rev. Code §4511.051, attachment C). Multi-use paths have been built along highways in more than thirty communities across the country (path list, Attachment D).

***Defendant Ohio Department of Transportation ("ODOT") has proposed a bridge and highway plan deleterious to the health and safety of those on the road, whether the transportation choice is on foot, by bicycle or motorized vehicle.*** Defendant ODOT has been consistent in opposing the incorporation of cyclist and pedestrian interests into its transportation infrastructure projects, even drawing the criticism of co-defendant Federal Highway Administration ("FHWA") for failing to adequately incorporate cycling and pedestrian interests into planning and project development:

> There is a demonstrated need to improve upon the state of the practice regarding bicycle and pedestrian planning statewide. There is also a need to continue to educate engineers and planners alike in this area.
> **2009 FHWA Report, Executive Summary** (attachment E).

***If plaintiffs are not permitted to move forward, it's not apparent how the issues are to be raised in Ohio at all and ODOT will be enabled to continue to thwart its obligations.***

2

**Motion to Dismiss**

The Standard of review for a Motion to Dismiss is whether the plaintiffs have raised any potential basis for the claim, construing the assertions most favorably towards the plaintiffs.

> The court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). Dismissal of a complaint under Fed.R.Civ.P. 12(b)(6) is proper when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561, 127 S.Ct. 1955, 1968 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957)).
> **In re Level Propane Gases, Inc.**, 040210 FED6, 09-804 7 (US Ct. App. 6th Cir., 2010).

Through defendant ODOT's Environmental Impact statement (EIS), ODOT asserted that "all relevant facts" were put before FHWA to permit making appropriate decisions, including the decision to deny a bicycle and pedestrian path on the proposed I-90 innerbelt bridge deck. However, the record fails to establish that, prior to FHWA's finalization of their Record of Decision:

- ODOT presented facts in the EIS regarding cyclist and pedestrian desires for a multi-use path to FHWA;

- ODOT presented cyclist's comments at the public hearings to FHWA; or

- Cyclists had an opportunity to refute any ODOT assertions opposing a bicycle and pedestrian path, when moving from the stage of the Draft EIS to the EIS.

With the gaps of information submitted by ODOT to FHWA, the Northeast Ohio cycling community recently completed rider surveys on its own, posting observers at significant roadways to tally users of the Lorain-Carnegie Bridge (affidavit of Jim Sheehan, attachment G).

3

The Lorain-Carnegie Bridge poses substantial safety risk (affidavit, attachment G), is often strewn with glass and other debris and frequently carries automobiles who travel in excess of the posted speed limit. Nevertheless, the bridge is a frequently used cycling and pedestrian route from the Westside into the downtown area. The bike count identified high levels of users (cyclists, pedestrians and joggers), during the morning and evening commuting hours and the lunch period:

- **May 19, 2010** -- 9-10am (count=29); 11am-12 noon (count=49); 12-1pm (count=72); 1-2pm (count=31); and
- **May 20, 2010** -- 5-6pm (count=69).

**Sheehan Affidavit**, attachment G

For both the noon hour on May 19th and the evening commute on May 20th, patron usage *exceeded one rider, pedestrian or jogger per minute!*

Had ODOT presented the public's strong support for a "Bridge for All," a bridge that included a bicycle and pedestrian multi-use path, the FHWA may have issued a different result. The United States department of Transportation ("US DOT"), which administers FHWA, has indicated very strong support for bicycle and pedestrian opportunities through federal transportation programs. Earlier this year, US DOT announced plans to revise criteria for evaluating some US DOT projects to support more cycling and pedestrian activities:

> We are integrating the needs of bicyclists in federally-funded road projects. We are discouraging transportation investments that negatively affect cyclists and pedestrians. And we are encouraging investments that go beyond the minimum requirements and provide facilities for bicyclists and pedestrians of all ages and abilities.
> **Comments of Secretary Ray LaHood, US Department of Transportation** (Attachments H and I).

4

> the 2007 ROD, and the 2007 FEIS constitute final agency action such that review under NEPA is appropriate.
> **Greater Yellowstone Coalition, v. Kempthorne,** 577 F.Supp.2d 183, 189 (D.D.C. 2008).

APA furnishes sufficient basis to challenge to the FHWA Record of Decision, based upon the faulty ODOT EIS, which failed to address cycling and pedestrian interests in their planning and evaluation as required by federal transportation and environmental laws.

Agency compliance with environmental and transportation laws are reviewed under the APA, requiring a determination of whether the agency's final action was "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." **Okanogan Highlands Alliance v. Williams,** 236 F.3d 468, 471 (9th Cir.2000); Also see, **City of Carmel-by-the-Sea v. U.S. Dept. of Transportation,** 123 F.3d 1142, 1150 (9th Cir.1997) ("... we defer to agency opinion if it is not otherwise shown to be arbitrary and capricious.").

In evaluating an *arbitrary or capricious* standard, courts look to criteria established by Congress. Use of other criteria or ignoring congressionally mandated criteria is indicia of unsatisfactory decision-making:

> We may reverse the agency's decision as arbitrary and capricious if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, offered an explanation that ran counter to the evidence before the agency, or offered one that is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.
> **Western Radio Servs. Co., Inc. v. Espy,** 79 F.3d 896, 900 (9th Cir.1996).

When reviewing for an APA violation, courts look to whether the Environmental Impact Statement addressed issues sufficiently to enable an evaluation of the environmental consequence

6

("whether an environmental impact statement contains a reasonably thorough discussion of the significant aspects of the probable environmental consequences.") **Churchill County v. Norton**, 276 F.3d 1060, 1071 (9th Cir.2001) (quoting **Trout Unlimited v. Morton**, 509 F.2d 1276, 1283 (9th Cir.1974)). Also see, **City of Carmel**, 123 F.3d at 1150-51 ("... the National Environmental Policy Act requires a 'reasonably thorough' discussion of the environmental consequences in question, not unanimity of opinion, expert or otherwise."). In making this determination, a court must make a " 'pragmatic judgment whether the environmental impact statement's form, content, and preparation *foster both informed decision-making and informed public participation.*'" **Churchill County**, 276 F.3d at 1071; **City of Carmel**, 123 F.3d at 1150-51 (*emphasis added*).

*The APA analysis looks to a review of reasonable decision alternatives, as indicia of an agencies' thoroughness.* In this instance, it seems that ODOT evaluated the impact of closing exit lanes, but made no evaluation of pedestrian and cycling interests regarding the bridge, despite congressional directives. An environmental impact statement must discuss "reasonable alternatives" to the proposed action. 42 U.S.C. § 4332(2)(C)(iii); **City of Carmel**, 123 F.3d at 1155. ODOT's action is contrary to congressional instruction, failing to provide FHWA with a reasonable alternative to address cycling and pedestrian goals.

The review of alternatives, again, intends to support the over-arching policy goal of informed decision-making and public participation. See, **Morongo Band of Mission Indians v. FAA**, 161 F.3d 569, 575 (9th Cir.1998) ("The *'touchstone* for [the court's] inquiry is whether an environmental impact statement's selection and *discussion of alternatives fosters informed decision-*

7

*making and informed public participation.'* ") (quoting <u>City of Angoon v. Hodel</u>, 803 F.2d 1016, 1020 (9th Cir.1986)).

*However, an agency is not allowed to create "straw arguments" to defeat, without evaluating congressionally mandated criteria.* An agency responsibility to evaluate "reasonable alternatives" emanates from the environmental impact statement's Purpose and Need section; "the underlying purpose and need to which the agency is responding in proposing the alternatives including the proposed action." 40 C.F.R. § 1502.13; see also <u>City of Carmel</u>, 123 F.3d at 1155 ("The stated goal of a project necessarily dictates the range of reasonable alternatives and *an agency cannot define its objectives in unreasonably narrow terms.*").

ODOT and FHWA decision-making did not in any remote fashion, conform to the "informed public decision-making" required by the APA process.

**<u>Standing to Sue</u>**

Defendant ODOT challenges plaintiffs standing to bring suit, a basis which turns on injury:

> To proceed with this action, the City must show both constitutional standing and prudential standing. Under Article III, constitutional standing requires: (1) an injury in fact, which is both concrete and particularized, and actual or imminent, not merely conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury can be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). <u>City of Sausalito v. O'Neill</u>, 211 F.Supp.2d 1175, 1185 (N.D.Cal. 2002).

Standing, at this stage, requires an actual, live controversy:

> Standing is not merely a pretrial formality, but rather a constitutional directive that defines and limits the power of federal courts to hear only actual "cases" or "controversies." *See* U.S. CONST., ART. III, § 2, cl. 1. "The constitutional power of federal courts cannot be defined, and indeed has no substance, without reference to the necessity to adjudge the legal rights of litigants in actual controversies." *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (*quoting Liverpool S.S. Co. v. Commissioners of Emigration*, 113 U.S. 33, 39, 5 S.Ct. 352, 28 L.Ed. 899 (1885)). As such, the Supreme Court has repeatedly stated that:
>> [A]t an irreducible minimum, Article III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision.
>
> *Valley Forge Christian College*, 454 U.S. at 472, 102 S.Ct. 752 (internal citations and quotation marks omitted). In short, standing requires injury-in-fact, causation and redressability.
>
> **Steel Company v. Citizens for a Better Environment**, 523 U.S. 83, 103-04, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

The type of injury has taken various forms, including the allegation of a "distinct and palpable" injury, **Warth v. Seldin**, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), but does not have to be substantial, as even "an 'identifiable trifle' will suffice." **Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.**, 913 F.2d 64, 71 (3rd Cir., 1990), including injury that harms plaintiffs' aesthetic and recreational interests (**Sierra Club v. Morton**, 405 U.S. 727, 735, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) or that an environmental group member had driven over a polluted body of water and was offended at its appearance stated a sufficient injury to justify standing (**Friends of the Earth v. Consolidated Rail Corp.**, 768 F.2d 57, 61 (2d Cir. 1985).

The Courts have also established that plaintiffs are not required to establish injury causation with "absolute scientific rigor." **Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.**, 913 F.2d 64, 72 (3rd Cir., 1990), but must establish that defendant's conduct is "fairly traceable" to plaintiff's injury. **Simon v. Eastern Kentucky Welfare Rights Organization**, 426 U.S. 26, 38, 96 Sect. 1917, 48 L.Ed.2d 450 (1976). This inquiry basically asks the following question; is there a "substantial likelihood that defendants conduct caused plaintiff's harm." **Interfaith Community Organization v. Honeywell**, 188 F.Supp.2d 486, 496 (D.N.J. 2002).

The injury is no less established by the virtue of its assertion by an association or not for profit organization like ClevelandBikes:

> An association's or organizaton's standing to initiate suit on behalf of its members exists "when [1] its members would otherwise have standing to sue in their own right, [2] the interests at stake are germane to the organization's purpose, and [3] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (*citing Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)). An association can assert standing "[e]ven in the absence of injury to itself" as long as the individual members or individuals that possess the "indicia of membership" would individually have a justiciable case. *Warth*, 422 U.S. at 511, 95 S.Ct. 2197; *Hunt*, 432 U.S. at 343-44, 97 S.Ct. 2434.
> **Interfaith Community Organization v. Honeywell**, 188 F.Supp.2d 486, 496 (D.N.J. 2002).

*Plaintiffs' injuries could not be clearer.* Defendants' decision not to even evaluate a bicycle and pedestrian option on the proposed innerbelt bridge prevents the construction of the most direct route into downtown Cleveland, leaving them with less safe options. Cyclists will continue to use the ODOT recommended routes (attachment J), riding, east-west, into Cleveland on glass and

debris-strewn Lorain-Carnegie Bridge, separated from speeding traffic by a line of paint or traverse through the flats area, a longer, hazardous trip with poor lighting, broken roads and few sidewalks. Plaintiffs have adequate standing to proceed and get their day in court.

**Right of Action**

Defendant ODOT asserts the matter should be dismissed as plaintiffs lack standing to assert the proposed claim under various federal environmental laws. Whether plaintiffs can assert an injury and support the claim turns on finding an implied private right of action is analyzed under the four-part test announced by the Supreme Court in **Cort v. Ash**, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975), a case involving corporate spending in elections:

> We have previously summarized that test as follows:
> (1) Is this plaintiff a member of the class for whose "special" benefit the statute was passed? In other words, does the statute create a federal right for this plaintiff?
> (2) Is there any evidence of legislative intent, either explicit or implicit, to create or deny a private remedy?
> (3) Is it consistent with the legislative scheme to imply a private remedy?
> (4) Is the cause of action one traditionally relegated to state law so that implying a federal right of action would be inappropriate?
> **Lundeen v. Mineta**, 291 F.3d 300, 321 (5th Cir. 2002).

*Class for Whose "Special Benefit" Statute Was Enacted:*

Defendant ODOT cites the Lundeen case to establish the framework for evaluating a private right of action, a case filed by a single individual as plaintiff, bypassing the larger interests of an association or nonprofit organization. ClevelandBikes was formed specifically to represent the broader cycling interests, at the federal, state and local level (see Incorporation documents,

11

attachment A). As set out in the plaintiffs' Complaint, The environmental and transportation legislation include numerous examples indicating the intent to advance the interests of cycling and pedestrians in federally-funded transportation projects and equalize their consideration, along with motorized vehicles. The APA requires public agencies to follow identified legal processes and support meaningful public participation. Plaintiffs are clearly a part of the class benefitted by the statute.

*Evidence of Legislative Intent:*

The National Environmental Policy Act was created in response to the identification of environmental hazards and the need to take urgent steps to ameliorate conditions and set the nation on a cleaner, more environmentally harmonious path that meets the goal of long-term sustainability:

> The National Environmental Policy Act was enacted in part to declare a national policy of encouraging productive and enjoyable harmony between man and the environment, and to prevent or eliminate damage to the environment. **42 U.S.C. § 4321**
>
> One of the responsibilities of the Federal government under the National Environmental Policy Act is to "preserve important historic, cultural, and natural aspects of the national heritage, and maintain, wherever possible, an environment which supports diversity and variety of individual choice...." **42 U.S.C. § 4331(b)(4)**

The Act set out a series of requirements, that an environmental impact statement need be prepared for "major Federal actions significantly affecting the quality of the human environment...." **42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1508.11**. The requirement is not some abstract document, but one to adequately inform decision makers and allow a full airing of environmental issues:

12

> The National Environmental Policy Act provides that a detailed environmental impact statement shall be prepared for "major Federal actions significantly affecting the quality of the human environment...." 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1508.11. ***The purpose of an environmental impact statement is to provide full and fair discussion of significant environmental impacts and to inform decision makers and the public of reasonable alternatives which would minimize adverse impact to the environment*** 40 C.F.R. § 1502.1. The environmental impact statement must discuss: (1) the environmental impact of the proposed action; (2) any adverse environmental effects which cannot be avoided should the proposal be implemented; (3) alternatives to the proposed action; (4) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity; and (5) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented. 42 U.S.C. § 4332(2)(C).
> **City of Sausalito v. O'Neill,** 211 F.Supp.2d 1175, 1190-91 (N.D.Cal. 2002). *(**Emphasis added**).*

The statute contemplates judicial review:

> Our analysis under the first exception begins with the "strong presumption" that Congress intends that the federal courts review agency action. The agency can rebut this presumption by pointing to "specific language or specific legislative history that is a reliable indicator of congressional intent." The standard is whether congressional intent to preclude judicial review is "fairly discernible in the statutory scheme." In determining whether this is so, we cast a broad evidentiary net: We look to the statute's language, structure, and legislative history, and also to the nature of the administrative action authorized.
> **Lundeen v. Mineta,** 291 F.3d 300, 305 (5th Cir. 2002).

As described in the complaint and briefs, ODOT never presented the information of cycling and pedestrian advocates *prior* to the FHWA decision. Apparently, ODOT solicited FHWA's decision via private letter, prior to the public hearings. Their process undermined the accuracy and credibility of FHWA decision-making, in which it is directed to utilize all relevant information in reaching its decision in the Record of Decision. Plaintiffs should be permitted to go forward to get their day in court.

***Consistent with Legislative Scheme to Imply Private Remedy:***

13

In identifying a private right of action, federal courts have looked to the purpose of the legislation and required a relationship to the purpose of the lawsuit, before deferring to an agency. In a case involving the National Park Service, the Court noted that the agency failed to document its decision-making on the very subject the statute sought to protect, noise pollution in the park, which it considered to be the very essence of arbitrary and capricious agency action:

> The ROD then states that the decision will be " beneficial in Yellowstone... compared to current use," *id.,* and concludes that " [i]mpairment of park resources will not occur; the level of oversnow vehicle sound under the decision will not harm the integrity of park resources and values." *Id.* NPS entirely fails to explain why a finding of minor, moderate, and major adverse impacts on soundscapes does not constitute impairment, let alone the lesser threshold of " unacceptable impacts." The NPS Policies clearly define an unacceptable impact as one that would " unreasonably interfere with ... the natural soundscape maintained in wilderness and natural, historical, or commemorative locations within the park." 2007 ROD at 29. Like the Court in *Mainella,* this Court is equally perplexed as to why any impact characterized as "major and adverse" does not constitute an unacceptable impact, let alone impairment. This is a distinction NPS again fails to explain. *See Mainella,* 459 F.Supp.2d at 102, n. 24. There is no higher level than "major" on the impact scale. NPS provides no explanation as to how the most adverse impacts can still be considered acceptable....the Court finds that the non-impairment conclusion regarding impacts to the natural soundscape in the parks is fundamentally arbitrary and capricious.
> **Greater Yellowstone Coalition v. Kempthorne,** 577 F.Supp.2d 183, 201-02 (D.D.C. 2008).

The Court proceeded to note that administrative agencies are often the beneficiary of deference, but deference is only warranted when the facts asserted bear relationship to the decisions made and clearly provide sufficient data to the decision-maker:

> The Court concluded, "the Winter Use Plan, as codified in the Final Rule and explained in the 2007 ROD, is arbitrary and capricious, unsupported by the record, and contrary to law. In contravention of the Organic Act, the Plan clearly elevates use over conservation of park resources and values and fails to articulate why the Plan's "major adverse impacts" are "necessary and appropriate to fulfill the purposes of the park."

14

> *Furthermore, the FEIS in support of the Plan does not provide the decisionmaker with a clear analysis of the alternatives that NEPA requires.* Chief among its failings, the FEIS relies on admittedly inaccurate sound modeling data, employs a park-wide metric that dilutes the Plan's impacts on soundscapes and air quality, and utterly fails to explain why none of the seven alternatives would constitute "impairment" or unacceptable impacts. According to NPS's own data, the WUP will increase air pollution, exceed the use levels recommended by NPS biologists to protect wildlife, and cause major adverse impacts to the natural soundscape in Yellowstone. Despite this, NPS found that the plan's impacts are wholly " acceptable," and utterly fails to explain this incongruous conclusion. Put simply, the WUP provides "no rational connection between the facts found and the choice made." *Alpharma, Inc. v. Leavitt,* 460 F.3d 1, 6 (D.C.Cir.2006). While the Court will defer to an agency's exercise of expertise, the " Court will not defer to the agency's conclusory or unsupported assertions." *McDonnell Douglas Corp. v. U.S. Dep't of the Air Force,* 375 F.3d 1182, 1187 (D.C.Cir.2004)."
> **Greater Yellowstone Coalition v. Kempthorne**, 577 F.Supp.2d 183, 209-10 (D.D.C. 2008). *(emphasis added).*

Like the US Parks Service administrative action, ODOT failed to provide information offered at public hearings that cyclists and pedestrians sought a bike path on the proposed innerbelt bridge and to provide a multi-use path would represent positive steps for cycling access, public safety and public health. *It should come as no surprise that FHWA did not ask about bicycle/ pedestrian access to the bridge. ODOT made sure they only heard one side of the argument.*

*Traditionally Relegated to State Law:*

Challenging Defendant ODOT and Defendant FHWA undermines no issue primarily reserved for state action and protecting cycling and pedestrian interests is consistent with the federal legislation. Further, given the protection for cyclists riding alongside a freeway in a defined and marked path under the Ohio Revised Code (See Ohio Rev. Code §4511.051, attachment C), this lawsuit and the enforcement through the federal statutes are fully consistent with state law and

15

state interests.

*Conclusion:*

***Defendants Motions to Dismiss should be rejected as they fail to meet the necessary standard needed to deprive plaintiffs of their day in court.*** Plaintiffs are both individual, aggrieved cyclists and a 501(C)(3) not for profit organization, founded in 2003 specifically to advocate for and "protect and defend" the interests of cyclists in Northeast Ohio.

Defendant ODOT has proposed a bridge and highway plan deleterious to the health and safety of those on the road, whether the transportation choice is on foot, by bicycle or motorized vehicle. The record fails to establish that defendant ODOT met its responsibility to present all relevant information to FHWA for full and accurate decision-making, discouraged meaningful public participation, disadvantaged cyclists and pedestrians and barred the very perspective that the legislation intended to require in the decision-making. The failure to incorporate cycling and

pedestrian interests is a long-standing shortcoming of the Ohio Department of Transportation, as noted by co-defendant FHWA in their 2009 report.  *If plaintiffs are not permitted to move forward, it's not apparent that these issues are to be raised in Ohio at all.*

Respectfully submitted,

_____
KEVIN CRONIN, S. Ct. Reg. No. 0039891
Attorney for Plaintiffs
The Brown Hoist Building
4403 Saint Clair Avenue
Cleveland, Ohio  44103
ph: 216.377.0615; fx: 216.881.3928
kevin@kevincronin.us

### SERVICE

A copy of the foregoing Plaintiffs' Brief In Opposition to Defendant ODOT's Motion to Dismiss was sent by regular U.S. mail on this 30th day of June, 2010 to:
- Richard J. Makowski, Assistant Attorney General, Chief, Transportation Section, 150 East Gay Street, 22nd floor, Columbus, Ohio 43215(and by email to Richard.Makowski @ohioattorneygeneral.gov); and
- Lisa Hammond Johnson, counsel to defendant FHWA, Office of the US Attorney, 801 West Superior Avenue, Cleveland, Ohio 44113 (and by email to Lisa.Hammond. Johnson@usdoj.gov).

_____
Kevin Cronin, Attorney for Plaintiffs