UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KEVIN CRONIN, *et al.*, ) | Case No.: 1:09 CV 2699 |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | JUDGE SOLOMON OLIVER, JR. |
| ) | |
| OHIO DEPARTMENT OF ) | |
| TRANSPORTATION, *et al.*, ) | |
| ) | |
| Defendants ) | <u>ORDER</u> |

The court held a telephonic status conference on the open record with counsel for the parties in the within case on September 17, 2010, at 4:30 p.m. for the purposes of discussing Plaintiffs Cronin and ClevelandBikes' ("Plaintiffs") Application for a Temporary Restraining Order and Preliminary Injunction (ECF No. 41). Each party explained its position on the pending Motion, and the court took the Motion under advisement. For the following reasons, the court denies Plaintiff's Application for Temporary Restraining Order and Preliminary Injunction (ECF No. 41).

## I. FACTS AND PROCEDURAL HISTORY

This case arises out of the State of Ohio's decision in 2009, to "initiate a project to redesign and reconstruct portions of Ohio Interstate 90." (Sec. Am. Compl., ECF No. 32, ¶ 4.) Among other modifications, Ohio Interstate 90's "Innerbelt Plan" consisted of the following primary measures:

> - The removal of several Interstate 90 highway exits and entrances for Saint Clair Avenue and Prospect Avenue in Cleveland;
> - The redesign of the "feeder" streets, those streets providing entrances and exits to the redesigned highway or otherwise channeling traffic towards the highway entrances and exits,
> - The redesign and reconstruction of a highway segment to improve motorist safety by reducing a significant curve in the highway ("deadman's curve"), as the highway turns from the north to the east.

(*Id.*)

Subsequently, Defendant Ohio Department of Transportation ("ODOT") issued a Draft Environmental Impact Statement ("DEIS") and Environmental Impact Statement ("EIS"). (*Id.*, ¶ 5.) These Statements are designed to describe the impact of the proposed construction plan "on humans and their environment, as well as comparing transportation alternatives and respond to public comment." (*Id.*) After reviewing the DEIS and EIS, the U.S. Department of Transportation, Federal Highway Administration ("FHWA") approved the "Innerbelt Plan" in September of 2009. (*Id.*, ¶ 6.)

Plaintiff Kevin Cronin, a resident of the City of Cleveland, is an avid bicyclist and officer of the non-profit organization ClevelandBikes, which is also a Plaintiff in this lawsuit. ClevelandBikes is a group "organized under the laws of Ohio, committed to advancing all forms of bicycling as healthy recreation, sport and transportation." (Second Am. Compl., ECF No. 32, at p. 1.) Plaintiffs allege that "for a variety of reasons ... the ["Innerbelt Plan"], "DEIS," "EIS," and [FHWA's approval of the Plan is] inadequate, [because it fails] to address important requirements to ensure cyclist and pedestrian safety." (*Id.*, ¶ 8.) Furthermore, Plaintiffs claim that Defendants "fail[ed] to evaluate the impact of increased car and truck traffic on Cleveland streets, as well as the increased traffic idling as cars and trucks await entrance to the highway, on health and safety of cyclists and pedestrians lawfully traveling on the streets and sidewalks of the area." *Id.*

Count One of Plaintiffs' Second Amended Complaint, entitled Denial of Bridge Access, states that "[Defendant's] conduct is a violation of federal transportation and environmental laws..." (Sec. Am. Compl., ECF No. 32, ¶ 10.) Plaintiffs bring Count One pursuant to 23 C.F.R. §§ 652.5 and 450.300, and 23 U.S.C. § 217(e) and (g).

Count Two, entitled Street Congestion, Health and Safety, states that "a violation of federal environmental laws" occurred. (*Id.,* ¶ 14.) Plaintiffs bring Count Two pursuant to the National Environmental Policy Act ("NEPA"), specifically 42 U.S.C.A. § 4331(b) and 42 U.S.C.A. § 4332(E). Count Three, entitled Violation of the Administrative Procedure Act ("APA"), alleges that "Defendants' action constitutes of [sic] violation of environmental and transportation laws." (*Id.,* ¶ 19.) Plaintiffs bring Count Three pursuant to the APA.

## II. STANDARD FOR A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION

In considering whether to grant a preliminary injunction, a court must weigh the following factors: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiffs would suffer irreparable harm without the injunction; (3) whether the injunction would cause substantial harm to others; and (4) the impact of the injunction on the public. *Performance Unlimited v. Questar Publishers, Inc.*, 52 F.3d 1373, 1381 (6th Cir. 1995). None of these factors alone is determinative; instead, the court must engage in a balancing of all four factors. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985). If the court does issue a preliminary injunction, it is within the court's discretion whether to require Plaintiffs to post a security. *Molton Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (citing *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 529 (6th Cir. 1978)).

As the Sixth Circuit stated, "a preliminary injunction is an extraordinary remedy that should only be granted when the movant carries its burden of persuasion." *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002).

### III. LAW AND ANALYSIS

Counsel for Defendant ODOT and Defendant Jolene M. Molitoris, argued during the telephonic status conference that Plaintiffs are not likely to succeed on the merits of their claims and that this factor plus the substantial harm a preliminary injunction would have on Defendants far outweighs the alleged harm Plaintiffs would suffer if the preliminary injunction were denied. Counsel stated that ODOT and the FHWA considered cyclists and pedestrians when developing the innerbelt plan and that alternative routes exist to the innerbelt bridge. Counsel for ODOT further argued that Plaintiffs would not suffer harm because they have no defined interest in this case. Counsel expressed concern over the monetary loss Defendants would suffer if construction were enjoined until resolution of this case.

Counsel for FHWA and Defendant Victor Mendez argued that Defendants are likely to succeed on the merits of this case in part because Plaintiffs have not articulated a process that Defendants allegedly violated. Counsel categorizes Plaintiffs' Complaint as alleging that Defendants did not properly consider bicycle riders and pedestrians when planning the new construction, but Defendants maintain that they did consider them. Further, Counsel for FHWA stated that even if Plaintiffs prevailed on any of their three claims, the appropriate remedy would simply be for Defendants to reconsider particular environmental factors. Counsel for FHWA concurred with arguments made by Counsel for ODOT.

Plaintiffs argue that:

> Defendant ODOT has created a plan harmful to the health and safety of Northeast Ohio cyclists, pedestrians and other Cleveland residents, without discharging its obligations under federal transportation, environmental or administrative law. Defendant ODOT's documents submitted to [D]efendant FHWA did not demonstrate consideration of a pedestrian/cyclist perspective, as it was obligated to do, and is now poised to issue design contracts for the largest highway project in state history, locking its flawed plan in place for the next fifty years.

(Pls.' App. for TRO, at p. 3) (original emphasis omitted). Plaintiffs assert that the proposed Innerbelt Plan will burden those commuting short distances on the innerbelt and within Cleveland and that Defendants failed in the obligation to evaluate how the proposed state action would affect cyclists and pedestrians. (Pls.' Memo. in Supp. of Mot. for TRO and Inj., ECF No. 42, at pp. 7-8.)

The court finds that the likelihood of success prong tips in Defendants' favor. Plaintiffs make three claims: (1) Count One alleges that Defendants violated 23 C.F.R. §§ 652.5 and 450.300, and 23 U.S.C. § 217(e) and (g); (2) Count Two alleges that Defendants violated NEPA; and (3) Count Three alleges that Defendants violated the APA.

Plaintiffs do not, however, explain why they are likely to succeed on the merits of this case. They cite statutory provisions related to road construction, environmental impact of construction, and the requirement to consider bicyclists and pedestrians when planning road construction, but Plaintiffs do not explain why they will prevail on showing that Defendants violated these provisions. In support of their argument that they are likely to succeed on the merits of Counts One and Two, Plaintiffs explain that, "the purpose of an environmental impact statement is to provide full and fair discussion of significant environmental impacts and to inform decision makers and the public of reasonable alternatives which would minimize adverse impact to the environment." (Pls.' Memo.

in Supp. of Mot. for TRO and Inj., at p. 9.) However, Plaintiffs do not present sufficient evidence that the environmental impact statement in this case does not consider reasonable alternatives. Plaintiffs state that, "ODOT failed to provide information offered at public hearings that cyclists and pedestrians sought a bike path on the proposed innerbelt bridge and to provide a multi-use path would represent positive steps for cycling access, public safety and public health." (*Id.*, at p. 11.) Merely stating that this is the case, however, does not make it so.

Plaintiffs state that the court should employ the arbitrary and capricious standard of review when determining if a violation of the APA occurred. This is a very high standard. *Nat'l. Cotton Council of America v. U.S. E.P.A.*, 553 F.3d 927, 934 (6th Cir. 2009) ("Agency action is arbitrary and capricious where the agency has relied on factors that Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency experience.") (citation omitted). As the Sixth Circuit has explained, "[i]n considering whether an agency action was arbitrary and capricious, a 'court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *LeBlanc v. E.P.A.*, 310 F. App'x 770, 773 (6th Cir. 2009) (citations omitted). Plaintiffs do not present enough evidence at this stage to convince the court that they are likely to succeed on this claim given the standard of review required. The court is not expressing an opinion as to the ultimate merits of Plaintiffs' case, yet because "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion, for example," Plaintiffs cannot show that they are likely to succeed on the merits of the case at this stage. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

Furthermore, Plaintiffs do not make a compelling argument regarding whether they would suffer irreparable harm without the injunction. Although "ODOT has issued a decision accepting one of the design proposals, awarding a contract for the bridge construction" (Pls.' App. for TRO, ECF No. 41, at pp. 1-2), Defendants represented that this contract award only applies to some construction. Other construction is not planned to begin for the next couple of years. Therefore, prohibiting the planning to go forward completely is not time-sensitive. Plaintiffs argue that each decision made in the construction process limits options in the future. While this may be true, this is not specific proof of irreparable harm. Because Plaintiffs have not articulated why the alleged harm would be "irreparable," this factor does not strongly favor granting the preliminary injunction.

As for whether the injunction would cause substantial harm to others, the court finds that Defendants would suffer harm if they have to stop all work until a decision on the merits of the case. Defendants represented to the court during the telephonic conference that they would lose money each day the construction is delayed and that a delay could harm several existing contracts.

In this case, the factor of what impact the injunction would have on the public is not as pressing as the other three. While the proposed construction is designed to make transportation better in areas of Cleveland, it is not clear to the court that a delay in construction would be severely detrimental to the public. The court finds that this factor does not lean either towards imposing an injunction or denying one.

## IV. CONCLUSION

Therefore, the court does not find that at this Plaintiffs are likely to prevail on the merits, the court finds that Defendants would suffer substantial harm, and the court finds that Plaintiffs will not suffer irreparable harm if the request for the injunction is denied. The court hereby denies Plaintiffs' Application for Temporary Restraining Order and Preliminary Injunction (ECF No. 41).

IT IS SO ORDERED.

/S/SOLOMON OLIVER, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT

September 24, 2010