UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN CRONIN, *et al.*, | ) | Case No.: 1:09 CV 2699 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| OHIO DEPARTMENT OF | ) | |
| TRANSPORTATION, *et al.*, | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |

Currently pending before the court are: (1) Defendants Ohio Department of Transportation ("ODOT") and Director Jolene M. Molitoris's (collectively, "the State Defendants") Motion to Dismiss Second Amended Complaint (ECF No. 37); and (2) Defendants U.S. Department of Transportation, Federal Highway Administration ("FHWA"), and Administrator Victor Mendez's (collectively, "the Federal Defendants") Motion to Dismiss Second Amended Complaint (ECF No. 36). For the following reasons, the court grants the State Defendants' Motion and grants in part and denies in part the Federal Defendants' Motion.

**I. FACTS AND PROCEDURAL HISTORY**

Plaintiff Kevin Cronin, a resident of the City of Cleveland, is an avid bicyclist and officer of the non-profit organization ClevelandBikes. ClevelandBikes is a group "organized under the laws of Ohio, committed to advancing all forms of bicycling as healthy recreation, sport and

transportation." (Second Am. Compl., ECF No. 32, at p. 1.) Plaintiff brings this case on his own behalf and on the behalf of ClevelandBikes with respect to the matters involved herein.

In 2009, the State of Ohio "initiat[ed] a project to redesign and reconstruct portions of Ohio Interstate 90," a freeway in northeast Ohio. (*Id.*, ¶ 4.) Among other modifications, Ohio Interstate 90's project (hereafter, "Innerbelt Plan") consisted of the following primary measures:

> - The removal of several Interstate 90 highway exits and entrances for Saint Clair Avenue and Prospect Avenue in Cleveland;
> - The redesign of the "feeder" streets, those streets providing entrances and exits to the redesigned highway or otherwise channeling traffic towards the highway entrances and exits,
> - The redesign and reconstruction of a falling bridge spanning the Cuyahoga River; and
> - The redesign and reconstruction of a highway segment to improve motorist safety by reducing a significant curve in the highway ("deadman's curve"), as the highway turns from the north to the east.

(*Id.*)

Subsequently, Defendant ODOT issued a Draft Environmental Impact Statement ("DEIS") and Environmental Impact Statement ("EIS"). (*Id.*, ¶ 5.) According to Plaintiffs, these statements "intend[ed] to address various obligations under federal law, which describe[d] the impact of the [Innerbelt Plan] on humans and their environment, as well as comparing transportation alternatives and respond to public comment." (*Id.*)

After reviewing the DEIS and EIS, the FHWA approved the Innerbelt Plan in September of 2009. (*Id.*, ¶ 6.) Plaintiffs allege that "for a variety of reasons ... the [Innerbelt Plan], DEIS, EIS, and [FHWA's approval of the Plan is] inadequate, [because it fails] to address important requirements to ensure cyclist and pedestrian safety." (*Id.,* ¶ 8.) Furthermore, Plaintiffs claim that Defendants "fail[ed] to evaluate the impact of increased car and truck traffic on Cleveland streets, as well as the increased traffic idling as cars and trucks await entrance to the highway, on health and safety of

-2-

cyclists and pedestrians lawfully traveling on the streets and sidewalks of the area." *Id.*

In his first Complaint filed on November 18, 2009, Plaintiffs named ODOT and Jolene M. Molitoris, an ODOT Director, as Defendants. (ECF No. 1.) The Complaint consists of two counts: Count One, entitled Denial of Bridge Access, states that "[Defendant's] conduct is a violation of federal transportation and environmental laws..." (Compl., ECF No. 1, ¶ 10); Count Two, entitled Street Congestion, Health and Safety, states that "a violation of federal environmental laws" occurred. (*Id.,* ¶ 14.) Plaintiffs bring Count One pursuant to 23 C.F.R. §§ 652.5 and 450.300, and 23 U.S.C. § 217(e) and (g). Plaintiffs bring Count Two pursuant to the National Environmental Policy Act ("NEPA"), specifically 42 U.S.C.A. § 4331(b) and 42 U.S.C.A. § 4332(E).

On December 16, 2009, Plaintiffs filed an Amended Complaint. (ECF No. 10.) In his Amended Complaint, Cronin added FHWA and FHWA Administrator Victor Mendez as co-Defendants. The claims addressed in Counts One and Two of the first Complaint remained unchanged.

Plaintiffs filed a Second Amended Complaint on April 27, 2010, which added Count Three, entitled Violation of the Administrative Procedure Act ("APA"). (ECF No. 32.) Plaintiffs allege that "Defendants' action constitutes of [sic] violation of environmental and transportation laws." (Second Amended Compl., ¶ 19.)

## II. STANDARD OF DISMISSAL

### A. Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may take the form of either a facial or a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Facial attacks challenge the sufficiency of the pleading itself. *Id.*

Factual attacks, on the other hand, challenge the factual existence of subject-matter jurisdiction, regardless of what is or might be alleged in the pleadings. *Id.*

When adjudicating a motion to dismiss based upon a facial attack, the Court must accept all material allegations of the complaint as true and must construe the facts in favor of the non-moving party. *Ritchie*, 15 F.3d at 598 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)). *See also Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) (holding that all reasonable inferences must be drawn in favor of the plaintiff when evaluating a facial attack on subject-matter jurisdiction).

In contrast, a factual attack contests the validity of the facts alleged as support for subject-matter jurisdiction. *Ritchie*, 15 F.3d at 598. With a factual challenge, no presumption of truthfulness arises for either party, and the court must weigh the evidence to determine its power to hear the case. *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990)). The court may consider both the pleadings and evidence not contained in the pleadings. *Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000).

In any attack on original jurisdiction, the plaintiff bears the burden of proving that the court has jurisdiction over the subject matter. *Giesse v. Sec'y of Dept. of Health and Human Servs.*, 522 F.3d 697, 702 (6th Cir. 2008).

**B. Federal Rule of Civil Procedure 12(b)(6)**

The court examines the legal sufficiency of the plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6). *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993). The Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and recently in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009) clarified the law regarding what the plaintiff must plead in order to survive

a Rule 12(b)(6) motion.

When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the Complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Even though a Complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court in *Iqbal*, 129 S.Ct. at 1949, further explains the "plausibility" requirement, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

The Sixth Circuit has held that a court may consider allegations contained in the Complaint, as well as exhibits attached to or otherwise incorporated in the Complaint, all without converting a Motion to Dismiss to a Motion for Summary Judgment. Fed. R. Civ. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

## III. LAW AND ANALYSIS

### A. Count I: "Denial of Bridge Access"

### 1. Legal Standard

In *Cort v. Ash*, 422 U.S. 66 (1975), the U.S. Supreme Court established a standard of review to determine whether a Congressional statute permits a private right of action. Courts must consider four factors:

> First, is the plaintiff "one of the class for whose especial benefit the statute was enacted" ... - that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be appropriate to infer a cause of action based solely on federal law?

*Id.*, at 78.

The Supreme Court has since modified the *Cort* test. In *Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979), the Court found it unnecessary to consider each *Cort* factor equally. Instead, "[t]he central inquiry [now] remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Id.*, at 575.

The Sixth Circuit has adopted the modified *Cort* standard. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 308 (6th Cir. 2000) (citing *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15-16 (1979), and *Touche Ross*, 442 U.S. at 575). Recently, that court stated, "although *Cort* 'articulated a four-part test to determine whether an implied right of action exists in a federal statute,' subsequent decisions have made clear that congressional intent is the 'determinative factor.'" *Bowling Green v. Martin Land Development Co., Inc.*, 561 F.3d 556, 559

(6th Cir. 2009) (internal citations omitted). The three *Cort* factors remaining "are relevant [only] insofar as they assist in determining congressional intent." *Id.*, 561 F.3d at 559 (quoting *Parry*, 236 F.3d at 308); see also *Local 3-689, Oil, Chem., & Atomic Int'l Union v. Martin Marietta Energy Sys. Inc.*, 77 F.3d 131, 134 (6th Cir. 1996) ("The *Cort* factors are simply tools to divine the intent of Congress in the event of statutory silence."). If "a cause of action does not exist ... courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Bowling Green*, 561 F.3d at 559-60 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 287-88 (2001)).

Applying the relevant factors, this court must determine whether Congress explicitly or implicitly intended to provide a private right of action for Plaintiff's claims in Count One.

### 2. 23 U.S.C. §§ 217(e) and (g)

Plaintiffs cite 23 U.S.C. §§ 217(e) and (g) as a statutory basis for Count One. The former section states:

> **(e) Bridges.**--In any case where a highway bridge deck being replaced or rehabilitated with Federal financial participation is located on a highway on which bicycles are permitted to operate at each end of such bridge, and the Secretary determines that the safe accommodation of bicycles can be provided at reasonable cost as part of such replacement or rehabilitation, then such bridge shall be so replaced or rehabilitated as to provide such safe accommodations.

23 U.S.C. § 217(e). The latter section states that "[b]icyclists and pedestrians shall be given due consideration in the comprehensive transportation plans developed by each metropolitan planning organization." 23 U.S.C. § 217(g). Section 217(g) has been incorporated in the Transportation Equity Act for the 21st Century ("TEA-21")

This court finds the analysis in *Lundeen v. Mineta*, 291 F.3d 300 (5th Cir. 2002), with

respect to whether 23 U.S.C. §§ 217(e) and (g) provide a private right of action, to be persuasive. There, the court decided that bicyclists could not sue the U.S. Department of Transportation, the Metropolitan Transit Authority of Harris County, Texas and the City of Houston, Texas for alleged violations of § 217(g) because this act does not provide for a private right of action. Applying *Cort*, the court determined that § 217(g) was "duty-creating," not "right-creating." *Id.*, at 312. After an extensive review of the legislative history of TEA-21, *Lundeen* determined that Congress did not intend to create a private right of action to enforce any of the sections therein. As stated in *Lundeen*, 291 F.3d at 310 (quoting H.R.Rep. No. 105-550, at 440),

> [t]he [conference committee's] report clarifies that the conference committee meant for the provisions in §§ 134 and 135 that preclude judicial review-also enacted as part of TEA-21-to be quite broad in their effect: "The language clarifies that the failure to consider any specific factor in formulating plans, projects, programs, strategies and certification of planning processes is not reviewable in court."

The court "reinforced" its conclusion with the "rule that because a federal grant program is in the nature of a contract between the federal government on one side and states, regional authorities, and localities on the other, 'courts generally should decline to entertain claims by private persons that a state or local public body is not complying with a federal-state contract.'" *Id.* (quoting *Louisiana Landmarks Soc., Inc. v. City of New Orleans*, 85 F.3d 1119, 1125 (5th Cir. 1996)). Although *Lundeen* did not consider § 217(e), this court finds that the analysis undertaken in *Lundeen* also prohibits Plaintiffs from suing Defendants under § 217(e). Similar to § 217(g), § 217(e) contains "nebulous requirements" that do not guarantee a right to any individual bicyclist. *Lundeen*, 291 F.3d at 310. Thus, it is "highly unlikely" that Congress intended bicyclists to sue for inadequately considering their safety. *Id.*

Therefore, alleged violations of 23 U.S.C. §§ 217(e) and (g) are not reviewable by this court. The court lacks subject matter jurisdiction over Plaintiff's claim in this regard.

### 3. 23 C.F.R. §§ 652 and 450.300(a)

Plaintiffs also allege in Count I that Defendants' conduct is in violation of several "federal transportation and environmental laws and implementing regulations which require evaluation of the interests of cyclists and pedestrians in developing highway and bridge plans." (Second Am. Compl., ECF No. 32, ¶ 10.) The first regulation mentioned by Plaintiffs is 23 C.F.R.§ 652.5:

> **Policy.** The safe accommodation of pedestrians and bicyclists should be given full consideration during the development of Federal-aid highway projects, and during the construction of such projects. ... Where current or anticipated pedestrian and/or bicycle traffic presents a potential conflict with motor vehicle traffic, every effort shall be made to minimize the detrimental effects on all highway users who share the facility. On highways without full control of access where a bridge deck is being replaced or rehabilitated, and where bicycles are permitted to operate at each end, the bridge shall be reconstructed so that bicycles can be safely accommodated when it can be done at a reasonable cost. *Consultation with local groups of organized bicyclists is to be encouraged in the development of bicycle projects*.

23 C.F.R. § 652.5 (emphasis added).

The second regulation noted by Plaintiffs, 23 C.F.R. § 450.300(a), states in relevant part that "[t]he purposes of this subpart are to . . . [s]et[] forth the national policy that . . . encourages and promotes the safe and efficient development, management, and operation of surface transportation systems to serve the mobility needs of people and freight (including accessible pedestrian walkways and bicycle transportation facilities). " Section 450.300(b) states that it "[e]ncourages continued development and improvement of metropolitan transportation planning processes guided by the planning factors set forth in 23 U.S.C. 134(h) and 49 U.S.C. 5303(h)."

The court must determine whether Congress explicitly or implicitly intended to provide a private right of action pursuant to 23 C.F.R. § 652.5 and § 450.300. *See Bowling Green*, 561 F.3d at 559. Section 5303 prohibits judicial review of the failure to consider certain factors under chapter 23:

> **Failure to consider factors.** - The failure to consider any factor [of safety, security, accessibility, mobility, or efficiency] (1) *shall not be reviewable by any court* under this chapter, title 23, subchapter II of chapter 5 of title 5, or chapter 7 of title 5 in any matter affecting a transportation plan, a TIP, a project or strategy, or the certification of a planning process.

49 U.S.C. §5303(h)(2) (emphasis added). As this provision is referenced in § 450.300(a), it eliminates any possible private right of action pursuant to § 450.300(a).[1] Similarly, the court finds that there is no private right of action pursuant to 23 C.F.R. § 652.5. The language, "[c]onsultation with local groups of organized bicyclists is to be encouraged in the development of bicycle projects," does not create a private right of action, for it is a mere policy statement. *See Lundeen*, 291 F.3d at 313 (finding that U.S. Department of Transportation guidelines are not statutes and are therefore not judicially reviewable). Therefore, this court finds that Congress did not intend to have Defendants' alleged "failure to consider the rights and interests of cyclists and pedestrians in denying pedestrians and cyclists access to the bridge for purposes of riding and walking between the two bridge terminuses" reviewed by a federal court. (Sec. Am. Compl., ¶ 11.)

Because Plaintiffs are not entitled to a private right of action for all of Count One, this court

---

[1] In addition, 23 U.S.C. § 134, which 23 C.F.R. § 450.300 implements, states: ("The failure to consider any factor specified in paragraph (1) shall not be reviewable by any court under this title or chapter 53 of Title 49 . . . in any matter affecting a transportation plan . . . or the certification of a planning process." 23 U.S.C. § 134(h)(2).

lacks subject matter jurisdiction over that count. Therefore, ODOT's Motion to Dismiss the Second Amended Complaint (ECF No. 37) and FHWA's Motion to Dismiss (ECF No. 36) with respect to Count One are granted.

### B. Count Two: "Street Congestion, Health and Safety"

Plaintiffs allege that Defendants' conduct is in violation of the National Environment Policy Act ("NEPA"), specifically 42 U.S.C. § 4331(b) and 42 U.S.C. § 4332(E). Among other things, 42 U.S.C. § 4331(b) seeks to "assure for all Americans safe, healthful, productive, and esthetically and culturally pleasing surroundings; [and] attain the widest range of beneficial uses of the environment without degradation, risk to health or safety, or other undesirable and unintended consequences." 42 U.S.C. § 4331(b). Moreover, 42 U.S.C. § 4332(E) states that "all agencies of the Federal Government shall ... study, develop, and describe appropriate alternatives to recommended course of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources." 42 U.S.C. § 4332(E).

This court applies the same "determinative intent" standard adopted by the Sixth Circuit to determine whether the National Environmental Policy Act ("NEPA") provides a private right of action. See *Bowling Green*, 561 F.3d at 559-60; *Parry*, 236 F.3d at 308.

The U.S. Supreme Court has examined Congress's intent behind the development of the NEPA. Upon review, it is well established that a private right of action does not exist. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 872 (1990); *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 471 (1988). The Sixth Circuit adopts the same interpretation stating that "NEPA does not authorize a private right of action." *Sierra Club v. Slater*, 120 F.3d 623, 630 (6th Cir. 1997). However, this court does recognize that while the "NEPA does not authorize a

private right of action ... judicial review [of an administrative decision allegedly in violation of the NEPA] is granted through the Administrative Procedure Act." *Friends of Tims Ford v. Tennessee Valley Authority*, 585 F.3d 955, 964 (6th Cir. 2009); *Sierra Club*, 120 F.3d at 630-31.

Because Plaintiffs are not entitled to a private right of action pursuant to NEPA, this court lacks subject matter jurisdiction over that claim. Therefore, ODOT's Motion to Dismiss Second Amended Complaint (ECF No. 37) and FHWA's Motion to Dismiss (ECF No. 36) with respect to Count Two are granted.

## C. Count Three: "Violation of Administrative Procedure Act"

Plaintiffs allege that Defendants' actions are in violation of the Administrative Procedure Act ("APA"). Specifically, Plaintiffs "reallege and incorporate" Counts One and Two for the purposes of alleging Count Three. (Second Am. Compl., ECF No. 32, ¶ 18.)

### 1. Count 1 and the APA

#### a. §§ 217(e) and (g)

The court turns again to *Lundeen*, 291 F.3d 300, for guidance. After an in-depth analysis of the statutory text, statutory structure, and the legislative history, the court determined that § 217(g) does not permit judicial review under the APA. The court stated that, "[b]y enacting TEA-21, Congress did not intend to create a judicially reviewable, bicycle-safety-design criterion; rather, it anticipated that the failure to consider specific factors in planning a particular transportation project-even bicycle safety-would not be judicially reviewable." *Id.*, at 310. The court then analyzed the nature of the administrative action involved in the statute, and it found that it is "highly unlikely" that Congress intended to allow bicyclists and pedestrians to sue the U.S. Department of Transportation "for inadequately considering their safety." *Id*. This court finds that the same

-12-

reasoning applies to § 217(e). In any event, Plaintiffs did not include any support for its claim that the APA provides a right of action for violations of § 217(e) in its Opposition to the Defendants' Motions to Dismiss. (Pls.' Opp. to Mots. to Dismiss, ECF No. 38)

### b. 23 C.F.R. §§ 652 and 450.300(a)

Claims under 23 C.F.R. §§ 652 and 450.300(a) cannot be brought pursuant to the APA. Statute 49 U.S.C. §5303(h)(2) prohibits judicial review of 23 C.F.R. §§ 652 and 450.300(a) "by any court under . . . chapter 7 of title 5." As the APA is found in "chapter 7 of title 5," it is clear that Congress prohibited judicial review of 23 C.F.R. §§ 652 and 450.300(a) through application of the APA. 5 U.S.C. § 702.

### 2. Count 2 and the APA

The relevant provision, 5 U.S.C. § 702, states:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action with the meaning of a relevant statute, is entitled to judicial review thereof. *An action in a court of the United States seeking relief other than money damages* and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702 (emphasis added).

Pursuant to the APA, Plaintiffs seek the collection of monetary damages and an injunction to "enjoin [Defendants] from taking action ... until the innerbelt plan has been corrected to protect cyclists, pedestrians and other residents of Northeast Ohio in compliance with federal transportation environmental laws." (*Id*., p. 7.)

### 3. The State Defendants

Plaintiffs seem to allege that ODOT failed to present information to FWHA, and as a result,

-13-

the FWHA failed to take appropriate information into account. (Sec. Am. Compl., ¶ 15.) As a preliminary matter, it is the FHWA that issued the Record of Decision from which Plaintiffs seek judicial review pursuant to the APA. As a result, the State Defendants cannot be responsible for a violation of the APA. Therefore, the State Defendants are hereby dismissed from this case.

### 4. The Federal Defendants

Defendants argue that Plaintiffs's APA claim should be dismissed because they have "failed to provide a 'short and plain statement of the claim showing that the pleader is entitled to relief,' as contemplated by Rule 8(a)(2) of the Federal Rules of Civil Procedure." (Memo. in Supp. of Fed. Defs.' Mot. to Dismiss Sec. Am. Compl., ECF No. 36-1, at p. 12.) Plaintiffs allege that because ODOT did not provide pertinent information to FHWA, FHWA was "unable to accurately evaluate the impact of the ODOT innerbelt plan" (Sec. Am. Compl. ¶ 15), which violates NEPA's requirement that "all agencies of the Federal Government ... study, develop, and describe appropriate alternatives to recommended course of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources." 42 U.S.C. § 4332(E). NEPA further provides that "[s]ufficient analysis of such alternatives and their environmental benefits, costs, and risks should accompany the proposed action through the review process in order not to foreclose prematurely options which might enhance environmental quality or have less detrimental effects." 49 C.F.R. Pt. 520, Attach. 1.

The APA requires that a court determine, among other things, whether an administrative agency considered the relevant factors in making its decision. *Medina County Environmental Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 699 (5th Cir. 2010). Plaintiffs have sufficiently alleged that the FHWA's Record of Decision did not consider the relevant factors.

-14-

Plaintiffs have stated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Therefore, the court finds that Plaintiffs have standing to seek review of the Record of Decision to determine whether the decision violates NEPA pursuant to the APA.

### 5. Monetary Damages

Although the court finds that Plaintiffs can bring a claim that Defendants violated NEPA pursuant to the APA, Plaintiffs are not entitled to monetary damages.

#### a. Plaintiffs Seek Monetary Damages from Federal Government

This court finds that Plaintiffs are not entitled to monetary damages from the federal government pursuant to the APA, based on the doctrine of sovereign immunity. In the absence of a waiver, "sovereign immunity shields the Federal Government and its agencies from suit." *Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 475 (1994) (citing *Loeffler v. Frank*, 486 U.S. 549, 554 (1988); *Federal Housing Admin. v. Burr*, 309 U.S. 242, 244 (1940)). In fact, the text of the APA shows that it is not Congress' intention to provide a waiver with respect to monetary damages: "[a]n action in a court of the United States seeking relief *other than money damages* ... shall not be dismissed [for lack of subject matter jurisdiction]." 5 U.S.C. § 702 (emphasis added). The Sixth Circuit also recognizes that the APA does not provide such a waiver. *Capital Park Ltd. Dividend Housing Ass'n v. Jackson,* 202 F.App'x 873 (6th Cir. 2006) *See also Blakely v. United States*, 276 F.3d 853, 875 (6th Cir. 2002); *U.S. v. City of Detroit*, 329 F.3d 575 (6th Cir. 2003); *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320 (6th Cir. 1993). Therefore, sovereign immunity prohibits Plaintiffs from seeking monetary damages from the federal government.

**b. Plaintiffs Seek Monetary Damages From State Government**

Although the court previously dismissed State Plaintiffs from this case, the court finds that in the alternative, Plaintiffs are precluded from obtaining monetary damages by the Eleventh Amendment. The Eleventh Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend.11.

The Court in *Lawson v. Shelby County*, 211 F.3d 331, 334 (6th Cir. 2000), stated that the Eleventh Amendment "is a bar to federal court jurisdiction whenever a private citizen attempts to sue a state." Moreover, "[s]overeign immunity applies not only to the states themselves, but also to 'state agents and instrumentalities.'" *Beil v. Lake Erie Correction Records Dept.*, 282 F.App'x 363, 366 (6th Cir. 2008) (quoting *Regents of Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997)).

ODOT's immunity in this case "flows from the nature of sovereignty itself as well as the ... Eleventh Amendment." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (holding that state sovereign immunity precluded a tobacco company's due process claim again Tennessee's attorney general); *see also Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (holding that the Eleventh Amendment barred an equal protection class action against Michigan's retirement system for state-court judges and state officials). With respect to Defendant ODOT Director Jolene M. Molitoris, immunity stemming from the Eleventh Amendment "also applies to actions against state officials sued in their official capacity for money damages." *Ernst*, 427 F.3d at 358; *see also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.").

Therefore, Plaintiff cannot seek monetary damages from the State Defendants.

## IV. CONCLUSION

For the reasons stated above, the court hereby grants Defendants Ohio Department of Transportation and Director Jolene M. Molitoris's Motion to Dismiss Second Amended Complaint (ECF No. 37). The court hereby grants in part and denies in part Defendants U.S. Department of Transportation, Federal Highway Administration and Administrator Victor Mendez's Motion to Dismiss Second Amended Complaint (ECF No. 36). The only remaining claim Plaintiffs have against the Federal Defendants is, pursuant to the APA, whether the Federal Defendants' Record of Decision violated NEPA requirements. Plaintiffs cannot receive monetary damages from the Federal Defendants.

In addition, the court hereby denies as moot the Federal Defendants' Motion to Dismiss the Amended Complaint (ECF No. 21) and the State Defendants' Motion to Dismiss the Amended Complaint (ECF No. 22).

The court schedules a telephonic status conference with counsel for the parties in the within case for Monday, April 11, 2011, at 10:00 a.m.

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT

March 31, 2011